**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS**

| | |
|---|---|
| MELISSA SCARBROUGH, individually and on behalf of all others similarly situated,<br><br>v.<br><br>HONDA DEVELOPMENT & MANUFACTURING OF AMERICA, LLC | Case No. 2:22-cv-04277<br>FLSA Collective Action<br>Fed. R. Civ. P. 23 Class Action<br><br><br>Jury Trial Demanded |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### Summary

1. Like many other companies across the United States, Honda Development & Manufacturing of America, LLC's ("Honda") Kronos-based timekeeping and payroll systems were affected by a service outage in beginning in December 2021.

2. That outage led to problems in timekeeping and payroll throughout Honda's organization.

3. As a result, Honda's workers who were not exempt from overtime under federal and state law were not paid for all overtime hours worked and/or were not paid their proper overtime premium on time, if at all, for all overtime hours worked during and after the Kronos outage.

4. Melissa Scarbrough is one such Honda worker.

5. Honda could have easily implemented a system to accurately record time and properly pay non-exempt hourly and salaried employees until issues related to the outage were resolved.

6. Instead, Honda pushed the cost of the Kronos outage onto the most economically vulnerable people in its workforce.

7. Honda made the economic burden of the Kronos outage fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

8. Honda's failure to pay wages, including proper overtime, on time and in full for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

9. Honda's failure to pay wages, including proper overtime, for all hours worked to its workers in South Carolina also violates the South Carolina Payment of Wages Act (SCPWA), S.C. Code § 41-10-10 *et seq*.

10. Scarbrough brings this lawsuit to recover these unpaid overtime wages and other damages owed by Honda to himself and Honda's other non-overtime-exempt workers, who were the ultimate victims of not just the Kronos outage, but Honda's decision to make its own non-exempt employees workers bear the economic burden for the outage.

11. This action seeks to recover the unpaid wages and other damages owed by Honda to all these workers, as occasioned by the unpaid wages, along with liquidated damages, penalties, interest, and other remedies provided by federal and South Carolina law.

## JURISDICTION & VENUE

12. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

13. The Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Honda is headquartered in this District.

## PARTIES

15. **Plaintiff Melissa Scarbrough** is a natural person.

16. Scarbrough is and was, at all relevant times, an employee of Honda.

17. Scarbrough has worked for Honda since July 2020.

18. During the Kronos outage, Scarbrough worked for Honda in South Carolina.

19. Scarbrough represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former non-exempt employees of Honda, who worked in South Carolina at any time during Honda's Kronos service outage, beginning on or about December 11, 2021, until the time that Honda regained full access to all Kronos products and services, and resumed normal employee timekeeping and payment operations.**[1]

20. Scarbrough represents a class of similarly situated workers under South Carolina law pursuant to Federal Rule of Civil Procedure 23. This "South Carolina Class" is defined as:

> **All current or former non-exempt employees of Honda, who worked in South Carolina at any time during Honda's Kronos service outage, beginning on or about December 11, 2021, until the time that Honda regained full access to all Kronos products and services, and resumed normal employee timekeeping and payment operations.**

21. Throughout this Complaint, the FLSA Collective and South Carolina Class members are referred to collectively as the "Similarly Situated Workers."

22. **Defendant Honda Development & Manufacturing of America, LLC ("Honda")** is a domestic limited liability company.

---

[1] The FLSA Collective excludes those individuals who opt into *Michael Albert v. Honda Development & Manufacturing of America, LLC*, No. 2:22-cv-00694-EAS-KAJ (S.D. Ohio), by filing a consent to join that lawsuit.

23. Honda maintains its headquarters and principal place of business in this District and Division.

24. Honda may be served by service upon its registered agent, **Corporation Service Company, Inc., 3366 Riverside Dr., Ste. 103, Upper Arlington, OH 43221**, or by any other method allowed by law.

## COVERAGE UNDER THE FLSA

25. At all relevant times, Honda was an employer of Scarbrough within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

26. At all relevant times, Honda was and is an employer of the FLSA Collective members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

27. Honda was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

28. During at least the last three years, Honda has had gross annual sales in excess of $500,000.

29. Honda was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

30. Honda employs many workers, including Scarbrough, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

31. The goods and materials handled, sold, or otherwise worked on by Scarbrough, and other Honda employees and that have been moved in interstate commerce include, but are not limited to, automobiles and their component parts.

## FACTS

32. Honda manufactures and distributes automobiles.

33. Many of Honda's employees are non-exempt hourly and salaried workers.

34. Since at least 2021, Honda has used timekeeping software and hardware operated and maintained by Kronos.

35. On or about December 11, 2021, Kronos suffered a disruption in service due to a ransomware attack.

36. The Kronos outage interfered with the ability of its customers, including Honda, to use Kronos's software and hardware to track hours and pay employees.

37. For at least a portion of time following the Kronos outage, Honda failed to keep accurate track of the hours that Scarbrough and Similarly Situated Workers worked.

38. Instead, Honda has used various methods to estimate the number of hours Scarbrough and Similarly Situated Workers work in each pay period.

39. As a result of Honda's failure to accurately track their actual hours worked each week, employees who were non-exempt and worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

40. Many employees were not even paid for all their non-overtime wages for hours worked in certain workweeks.

41. Scarbrough is one of the thousands of Honda employees affected by these pay and timekeeping practices.

42. Scarbrough works over 40 hours per week each week for Honda.

43. Scarbrough has worked 40 hours, or more, each week since the time of the outage in December 2021.

44. But Scarbrough was not paid the proper overtime premium for all hours worked on time, if at all, for each of these weeks since the onset of the Kronos service disruption, on or about December 11, 2021.

45. Instead of paying Scarbrough for the hours she actually worked (including overtime hours), Honda simply paid based on estimates of time or pay, or based upon arbitrary considerations **other than** Scarbrough's actual hours worked and regular pay rates, in multiple workweeks.

46. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

47. Honda knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

48. Honda knows this because, prior to the Kronos outage, it routinely paid these workers for all overtime hours at the proper overtime rates.

49. Honda could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

50. Instead of accurately tracking hours and paying employees their overtime, Honda decided to arbitrarily pay these employees, without regard to the overtime hours they worked or the regular rates at which they were supposed to be paid.

51. It was feasible for Honda to have its employees and managers report accurate hours so they could be paid the full and correct amounts of money they were owed for the work they did for the company.

52. But Honda chose not to do that.

53. In other words, Honda pushed the effects of the Kronos outage onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

54. Scarbrough is just one of the many Honda employees who had to shoulder the burden of this decision by Honda.

55. Scarbrough was a non-exempt hourly employee of Honda.

56. Scarbrough regularly worked over 40 hours per week for Honda.

57. Scarbrough's normal, pre-Kronos outage hours are reflected in Honda's records.

58. Since the Kronos outage, Honda has not paid Scarbrough on time, if at all, for her actual hours worked each week.

59. Since the outage took place, Honda has accurately recorded the hours worked by Scarbrough and its other workers, in multiple workweeks.

60. Honda was aware of the overtime requirements of the FLSA.

61. Honda nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Scarbrough.

62. Honda's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the FLSA.

63. The full overtime wages owed to Scarbrough and the Similarly Situated Workers became "unpaid" when the work for Honda was done—that is, on Scarbrough and the Similarly Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed. Cl. 611,

618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

64. At the time Honda failed to pay Scarbrough and the Similarly Situated Workers in full for their overtime hours by their regular paydays, Honda became liable for all prejudgment interest, liquidated damages, penalties, and any other damages owed under federal and South Carolina law.

65. In other words, there is no distinction between late payment and nonpayment of wages under federal law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

66. Any payment made by MBUIS to Scarbrough or the Similarly Situated Workers that Honda may allege represents previously unpaid wages was not supervised by the Department of Labor or any court.

67. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See*, *e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

68. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to Honda's acts and omissions resulting in the unpaid wages in the first place.

69. Scarbrough and the Similarly Situated Workers remain uncompensated for the wages and other damages owed by Honda under federal and South Carolina law.

## COLLECTIVE ACTION ALLEGATIONS

70. Numerous individuals were victimized by Honda's patterns, practices, and policies, which are in willful violation of the FLSA.

71. Based on her experiences and tenure with Honda, Scarbrough is aware that Honda's illegal practices were imposed on the FLSA Collective.

72. The FLSA Collective members were not paid their full overtime premiums for all overtime hours worked.

73. These employees are victims of Honda's respective unlawful compensation practices and are similarly situated to Scarbrough in terms of the pay provisions and employment practices at issue in the collective in this lawsuit.

74. The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

75. Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

76. Honda's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

77. The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

78. The illegal practices Honda imposed on Scarbrough were likewise imposed on the South Carolina Class members.

79. Numerous other individuals who worked for Honda were were not properly compensated for all wages due to them, as required by South Carolina law.

80. The South Carolina Class is so numerous that joinder of all members of the class is impracticable.

81. Honda imposed uniform practices and policies on Scarbrough and the South Carolina Class members regardless of any individualized factors.

82. Based on her experience and tenure with Honda, as well as coverage of the Kronos payroll outage, Scarbrough is aware that Honda's illegal practices were imposed on the South Carolina Class members.

83. South Carolina Class members were all not timely paid proper overtime when they worked in excess of 40 hours per week.

84. Honda's failure to pay wages and overtime compensation in accordance with South Carolina law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the South Carolina Class members.

85. Scarbrough's experiences are therefore typical of the experiences of the South Carolina Class members.

86. Scarbrough has no interest contrary to, or in conflict with, the members of the South Carolina Class. Like each member of the proposed class, Scarbrough has an interest in obtaining the unpaid wages and other damages owed under the law.

87. A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

88. Absent this action, many South Carolina Class members likely will not obtain redress of their injuries and Honda will reap the unjust benefits of violating South Carolina law.

89. Furthermore, even if some of the South Carolina Class members could afford individual litigation against Honda, it would be unduly burdensome to the judicial system.

90. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the class and provide for judicial consistency.

91. The questions of law and fact common to each of the South Carolina Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a. Whether Scarbrough and the South Carolina Class members were paid the wages due to them;

    b. Whether Honda's failure to pay Scarbrough and the South Carolina Class members the wages due to them violated the SCWPA;

    c. Whether Honda paid Scarbrough and the South Carolina Class members all wages due within the period of time allowed by the SCWPA;

    d. Whether Honda's failure to timely pay wages to Scarbrough and the South Carolina Class members violated the SCWPA;

    e. Whether Honda failed to provide Scarbrough and the South Carolina Class members the wage statements required by the SCWPA;

    f. Whether Honda failed to provide the notices of changes in pay practice and deductions required by the SCWPA.

92. Scarbrough's claims are typical of the South Carolina Class members. Scarbrough and the South Carolina Class members have all sustained damages arising out of Honda's illegal and uniform employment policies.

93. Scarbrough knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

94. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

### First Cause of Action—Violations of the FLSA

95. Scarbrough incorporates each allegation set forth in paragraphs 1 to 94.

96. By failing to pay Scarbrough and the FLSA Collective members overtime at 1.5 times their regular rates, Honda violated the FLSA. 29 U.S.C. § 207(a).

97. Honda owes Scarbrough and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

98. Honda owes Scarbrough and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

99. Likewise, Honda owes Scarbrough and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours. 29 C.F.R. § 788.305.

100. Honda knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay Scarbrough and the Collective members the compensation owed to them under the FLSA.

101. Because Honda knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Honda owes these wages for at least the past three years.

102. Honda's failure to pay compensation owed under the FLSA to Scarbrough and the Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

103. Because Honda's decision not to pay overtime was not made in good faith, Honda also owes Scarbrough and the Collective members an amount equal to the unpaid wages as liquidated damages.

104. Accordingly, Scarbrough and the FLSA Collective members are entitled to their unpaid wages under the FLSA, including their agreed-upon wages up to 40 hours each week they worked overtime and overtime wages in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

### SECOND CAUSE OF ACTION—VIOLATIONS OF THE IMWL AS TO SCARBROUGH AND THE SOUTH CAROLINA CLASS

105. Scarbrough incorporates each allegation set forth in paragraphs 1 to 94.

106. The conduct alleged in this Complaint violates the South Carolina Payment of Wages Act (SCPWA), S.C. Code § 41-10-10 *et seq.*

107. At all relevant times, Honda has been an "employer" within the meaning of the SCPWA. S.C. Code § 41-10-10(1).

108. At all relevant times, Honda employed 5 or more employees.

109. Honda was and is not an employer of domestic labor in private homes.

110. At all relevant times, Honda employed Scarbrough and the other South Carolina Class members as "employees" within the meaning of the SCPWA.

111. The SCPWA requires an employer like Honda to pay all wages due to employees. S.C. Code § 41-10-40(D).

112. The SCPWA requires wages to be paid to employees on normal and agreed, pre-designated paydays. S.C. Code § 41-10-40(D).

113. Wages under the SCPWA include all amounts at which labor is rendered, whether fixed or based on time, task, piece, commission, or any other method of calculation. S.C. Code § 41-10-10(2).

114. Wages under the SCPWA include vacation, holiday, and sick leave payments due to the employee under any employer policy or employment contract. S.C. Code § 41-10-10(2).

115. The SCPWA prohibits employers from varying the agreed, pre-designated payday for employees without providing a conspicuous warning at least seven days beforehand. S.C. Code § 41-10-30(B).

116. The SCPWA requires an employer like Honda to pay all wages due to discharged employees within 48 hours of their separation from employment, or at the next regular payday which may not exceed 30 days. S.C. Code § 41-10-50.

117. The SCPWA requires an employer like Honda to provide an employee with an accurate, itemizes statement showing gross pay and deductions from wages for each pay period. S.C. Code § 41-10-30(C).

118. The SCPWA prohibits an employer like Honda from diverting or withholding any portion of an employees wages unless required or permitted to do so by state or federal law or upon written notice to the employee of the amounts and terms of the deductions. S.C. Code § 41-10-40(C).

119. Within the applicable limitations period, Honda had a policy and practice of failing to pay wages due to Scarbrough and the South Carolina Class members.

120. Within the applicable limitations period, Honda had a policy and practice of failing to pay wages due to Scarbrough and the South Carolina Class members within the time allowed by the SCPWA.

121. Within the applicable limitations period, Honda had a policy and practice of failing to provide accurate, itemized wage statements for each pay period to Scarbrough and the South Carolina Class members.

122. Within the applicable limitations period, Honda had a policy and practice of diverting wages due to Scarbrough and the South Carolina Class members without any basis in state or federal law.

123. Within the applicable limitations period, Honda had a policy and practice of altering its pay practices for wages due to Scarbrough and the South Carolina Class members without providing notice as required by the SCPWA.

124. Within the applicable limitations period, Honda had a policy and practice of altering its pay practices for wages due to Scarbrough and the South Carolina Class members without following the time requirements of the SCPWA.

125. Honda's acts and omissions violated the SCPWA.

126. Honda failure to comply with the SCPWA lacked a good faith basis.

127. Honda failure to comply with the SCPWA was willful.

128. Scarbrough and the South Carolina Class members are entitled to recover all wages due to them, liquidated damages in an amount equal to 2x of the wages due to them, attorneys' fees, costs, and penalties allowed by the SCPWA. S.C. Code § 41-10-80(C).

**RELIEF SOUGHT**

Scarbrough prays for judgment against Honda as follows:

    a.    For an order certifying a collective action for the FLSA claims;

    b.    For an order certifying a class action for the South Carolina law claims;

    c.    For an order finding Honda liable for violations of federal wage laws with respect to Scarbrough and all FLSA Collective members covered by this case;

    d.    For an order finding Honda liable for violations of South Carolina wage laws with respect to Scarbrough and all South Carolina Class members covered by this case;

    e.    For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal wage laws to Scarbrough and all FLSA Collective members covered by this case;

    f.    For a judgment awarding all unpaid wages, liquidated damages, and penalties under South Carolina wage laws to Scarbrough and all South Carolina Class members covered by this case;

    g.    For a judgment awarding attorneys' fees to Scarbrough and all FLSA Collective and South Carolina Class members covered by this case;

    h.    For a judgment awarding costs of this action to Scarbrough all FLSA Collective and South Carolina Class members covered by this case;

    i.    For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Scarbrough and all FLSA Collective and South Carolina Class members covered by this case; and

    j.    For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ J. Corey Asay*
_____
**J. Corey Asay**
Ohio Bar No.: 0090203
**MORGAN & MORGAN, P.A.**
333 W. Vine St., Ste. 1200
Lexington, KY 40507
Tel:   (859) 286-8368
Fax:   (859) 286-8384
Email: casay@forthepeople.com

**Matthew S. Parmet**
(*seeking admission pro hac vice*)
TX Bar # 24069719
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone  713 999 5228
matt@parmet.law

**Attorneys for Plaintiff**

# JURY DEMAND

Plaintiff demands a trial by jury on all issues.

*/s/ J. Corey Asay*
_____
**J. Corey Asay**